# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Lonnie Lee Banark,

    Petitioner

v.

Brian Williams, et al.,

    Respondents

Case No.: 2:16-cv-01948-JAD-BNW

**Order Denying Habeas Petition and Motion for Temporary Injunction**

**[ECF Nos. 34, 94]**

Lonnie Lee Banark was tried and convicted of driving under the influence of alcohol after he drunk-drove a U-Haul truck away from a Las Vegas bar. He challenges that Nevada state-court conviction with this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, blaming this result on ineffective assistance of counsel.[1] I evaluate Banark's claims, find them without merit, and deny his petition. And because I am dismissing this case, I also deny his pending motion for injunctive relief.[2]

## Procedural History

The bartender at the Alibi Casino was eyeing the surveillance video one late night in October 2010, when he spotted Banark parking a U-Haul crookedly across three parking spaces.[3] When Banark entered the bar, the veteran bartender thought he appeared to be intoxicated, urged him to take a cab, and called 911 to report Banark's license-plate number after he refused a cab

---

[1] ECF No. 34 (second amended petition); ECF No. 72 (order dismissing all non-IAC claims).
[2] ECF No. 94.
[3] ECF No. 43-20 at 151, 160 (Exhibit 80). Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 40, and are found at ECF Nos. 41–45.

and drove off. During that 911 call, the bartender also reported that Banark had pulled out a knife and threatened him with it.

Police tracked down the U-Haul, which was crossing into different travel lanes, and an officer was ultimately able to pull Banark over. He smelled of alcohol, failed every sobriety test he was administered, and was arrested for suspicion of driving under the influence. A warrantless blood draw confirmed that Banark's blood-alcohol level was .222 at the time of his arrest.

Banark's attorney successfully moved to suppress the blood-alcohol evidence,[4] but a motion in limine to exclude evidence about the knife was denied.[5] After a two-day trial, a jury convicted Banark of driving and/or being in actual physical control while under the influence of intoxicating liquor.[6] He was sentenced to 60–150 months in prison,[7] and the Nevada Supreme Court affirmed his conviction.[8] The state district court denied Banark's state postconviction habeas petition, and the Nevada Supreme Court affirmed that denial.[9]

Banark filed this federal petition in August 2016 and has twice amended it.[10] Though his claims originally included many grounds not cognizable on habeas review, a partially successful

---

[4] Exh. 71.
[5] Exhs. 73, 74.
[6] Exh. 79.
[7] Exh. 93.
[8] Exh. 116.
[9] Exhs. 126, 151.
[10] ECF Nos. 1-1, 12, 34.

motion to dismiss shaved those claims down to eleven ineffective-assistance-of-counsel theories.[11] Respondents have answered those remaining grounds, and Banark filed a reply.[12]

## Legal Standards

### A. The Antiterrorism and Effective Death Penalty Act (AEDPA)

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[13] A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[14] And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[15] The "objectively unreasonable" standard is difficult to satisfy;[16] "even 'clear error' will not suffice."[17]

---

[11] ECF No. 72.

[12] ECF Nos. 76, 77.

[13] 28 U.S.C. § 2254(d).

[14] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[15] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[16] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[17] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[18] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[19] "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[20] AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[21] If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[22] The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[23] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[24]

**B.    Ineffective Assistance of Counsel**

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[25] Counsel can "deprive a defendant of the right to effective

---

[18] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[19] *Id.* at 103.

[20] *Id.* at 101.

[21] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[22] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[23] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[24] 28 U.S.C. § 2254(e)(1).

[25] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

4

assistance[] simply by failing to render 'adequate legal assistance[.]'"[26] In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[27] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[28]

A reasonable probability is "probability sufficient to undermine confidence in the outcome."[29] Any review of the attorney's performance must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[30] "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[31] There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[32] When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[33]

---

[26] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[27] *Strickland*, 466 U.S. at 690.

[28] *Id.* at 694.

[29] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000)

[30] *Strickland*, 466 U.S. at 689.

[31] *Harrington*, 562 U.S. at 104.

[32] *Id.*

[33] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

5

If the state court has already rejected an ineffective-assistance claim, the federal habeas court may grant relief only if that decision was contrary to, or an unreasonable application of, the *Strickland* standard.[34] The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[35] So, I "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'"[36] And the federal habeas court may consider only the record that was before the state court that adjudicated the claim on its merits.[37]

**Analysis**

**A.     The warrantless blood draw [grounds 2(2)-(6)]**

The first five of Banark's remaining grounds relate to the arresting officer's warrantless blood draw without consent or a search warrant, which measured Banark's blood-alcohol level at .222. Before trial, Banark's counsel moved to suppress this evidence, arguing that it was obtained in violation of Banark's Fourth Amendment rights.[38] After a hearing, the state district court granted that motion and suppressed the results.[39]

Notwithstanding that successful suppression motion, Banark alleges the following claims related to that evidence:

- Ground 2(2): trial IAC for stating that the fruit-of-the-poisonous-tree doctrine was not used anymore;

---

[34] *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).
[35] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).
[36] *Id.*
[37] *Id.* at 181–84.
[38] Exh. 62.
[39] Exh. 71.

6

- Ground 2(3): trial and appellate IAC because the fruit doctrine was not mentioned during trial, on direct appeal or in his state habeas proceedings;

- Ground 2(4): appellate IAC for failing to address the suppression of the blood draw results;

- Ground 2(5): appellate IAC because the fruit doctrine was not the first item written about on direct appeal; and

- Ground 2(6): appellate IAC because the blood sample was suppressed five weeks before trial but was not mentioned or written about in the direct appeal.[40]

The state district court rejected these trial IAC claims in Banark's state postconviction petition:

> First, this Court finds that Defendant has not shown that trial counsel fell below an objective standard of reasonableness. Trial counsel was successfully able to get Defendant's blood sample showing a blood alcohol content of .222 suppressed. Logically, trial counsel would not bring up the suppressed blood sample in his opening statement or even mention it. Mentioning there was a suppressed blood sample would open the door for the State to bring in what Defendant's blood alcohol content was. Therefore, this Court finds trial counsel's actions did not fall below an objective standard of reasonableness.
>
> Second, this Court finds that Defendant cannot show he was prejudiced. Bringing in the suppressed blood sample would have made the State's case stronger and the [Nevada] Supreme Court has already found there was overwhelming evidence of Defendant's guilt for the DUI. Thus, this Court finds Defendant cannot establish prejudice.[41]

---

[40] ECF No. 34 at 6.

[41] Exh. 126 at 6; Exh. 116.

It also rejected his appellate IAC claims:

> Defendant also alleges that appellate counsel did not write about his blood sample being suppressed in his appeal. As discussed above, this Court finds this claim would have been futile and appellate counsel is not ineffective for deciding not to raise futile claims on appeal.[42]

The Nevada Court of Appeals affirmed, reasoning:

> Banark claims trial counsel was ineffective for failing to object to any introduction of the "fruits" of the illegal search and seizure. Banark fails to demonstrate counsel was deficient or resulting prejudice because Banark fails to demonstrate any "fruits" of the search were introduced at trial. Banark's blood alcohol test result was suppressed prior to trial pursuant to *Missouri v. McNeeley*, 569 U.S. 141 (2013), and the test result was not used at trial. Therefore, the district court did not err in denying this claim.[43]

Counsel for Banark successfully moved to suppress the warrantless blood draw, and Banark has not demonstrated that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*.[44] Federal grounds 2(2)–(6) are therefore denied.

**B.    Knife evidence [grounds 2(7)-(8)]**

At trial, bartender Jeffrey Jake Straub testified that, as he was following Banark out of the casino, Banark pulled out a knife and told Straub, "I'll fucking kill you. Get the fuck away from me." Straub reported this exchange to the 911 dispatcher. Prior to trial, defense counsel filed a motion in limine to exclude testimony about the knife and to redact any reference to the knife from the 911 call.[45] The state district court denied the motion, finding the knife evidence to be

---

[42] Exh. 126 at 6–7.

[43] Exh. 151 at 2.

[44] 28 U.S.C. § 2254(d).

[45] Exh. 73.

8

relevant and admissible.[46] Counsel renewed his objection to the evidence at trial, but the state district court affirmed the earlier ruling.[47]

The state district court denied Banark's IAC claim regarding the knife evidence:

> Defendant alleges trial counsel was ineffective for not submitting a motion specifically for a *Petrocelli* Hearing. This Court finds this claim meritless because counsel did file a Motion in Limine to exclude evidence of the uncharged assault. Thus, Defendant cannot show counsel was ineffective.[48]

To the extent that Banark presented these claims on appeal of his state postconviction petition to the Nevada Court of Appeals, the court summarily denied them,[49] and that denial of relief is presumed to be on the merits.[50] On direct appeal, the Nevada Supreme Court held that any error in admitting the knife evidence was harmless, given the overwhelming evidence of Banark's guilt of DUI.[51]

In grounds 2(7) and 2(8), Banark contends that trial counsel was ineffective in his efforts to get that knife evidence excluded from trial.[52] But those grounds fail because Banark has not shown that the Nevada Court of Appeals' adjudication of these claims resulted in a decision that was contrary to, or involved an unreasonable determination of the facts in light of, the evidence presented in the state-court proceeding.[53]

---

[46] Exh. 74.
[47] Exh. 80 at 144–145.
[48] Exh. 126 at 8.
[49] *See* Exhs. 146, 151.
[50] *Richter*, 562 U.S. at 99; *see Johnson v. Williams*, 568 U.S. 289, 298 (2013) (holding the *Richter* presumption applies even where "a state-court opinion addresses some but not all of a defendant's claims").
[51] Exh. 116 at 1–2.
[52] ECF No. 34 at 6.
[53] 28 U.S.C. § 2254(d).

Plus, any error in admitting the knife evidence was harmless, given the overwhelming evidence of Banark's DUI guilt. Straub's non-knife-related testimony was highly probative of Banark's intoxicated driving. Straub testified that he had been a bartender for 30 years by the time Banark came into the Alibi Casino.[54] He explained that he saw on the surveillance camera Banark pull a U-Haul into the parking lot and crookedly take up more than three spaces. He was walking "funny," and when Banark came in and ordered a beer, Straub observed that his eyes were bloodshot and he slurred his words. Straub opined that, in his veteran-bartender view, Banark was intoxicated.

The testimony of the Las Vegas Metropolitan Police Department officer who arrested Banark that night strongly corroborated that opinion. Officer Curtis Hill testified that he heard the radio dispatch about the U-Haul and was responding to a different call when he spotted it. He got behind the vehicle and called in the plate to dispatch. Hill paced the U-Haul at about 55 miles per hour in a 35-mile-per-hour speed-limit zone. He ultimately pulled the vehicle over based on the radio dispatch about the vehicle, because the driver was speeding, and because Banark "couldn't maintain his travel lane."[55] Hill burst his lights and sirens four times before Banark pulled over, which Hill considered suspicious because no other travelers were on the road going that direction. Hill testified that Banark was swaying or wobbling in a circle when he tried to stand still, his breath smelled of alcohol, and his eyes appeared glassy and bloodshot. Banark mumbled, and his speech was slurred. Hill asked Banark if he had been drinking, and Banark admitted that he had been drinking draft beer. When Hill asked, "how much?" Banark responded "too much." Hill also testified in detail about the field-sobriety tests he administered.

---

[54] Exh. 80 at 149–66.

[55] *Id*. at 170.

Hill acknowledged on cross-examination that Banark would not or could not cooperate with instructions for the sobriety tests.

In light of this overwhelming evidence of guilt, Banark has not demonstrated that the Nevada Court of Appeals' adjudication of these claims resulted in a decision that was contrary to, or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Federal habeas relief on grounds 2(7) and 2(8) is denied.

**C.     Surveillance-video evidence [ground 2(9)]**

In ground 2(9), Banark argues that trial counsel failed to "insist the security video be subpoenaed and played before the jury."[56] To the extent that Banark presented this claim on appeal of his state postconviction petition to the Nevada Court of Appeals, the court summarily denied it.[57] Banark has not shown that the surveillance video was exculpatory or how it would have added to the bartender's detailed testimony. He has not demonstrated that the Nevada Court of Appeals' decision on this claim was contrary to or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[58] Ground 2(9) is thus denied.

**D.     Trial transcripts [ground 2(10)]**

In ground 2(10) Banark claims that his trial counsel was ineffective for failing to request a certified trial transcript in order to identify errors and omitted issues.[59] In ground 2(11), he

---

[56] ECF No. 34 at 7.
[57] *See* Exhs. 146, 151.
[58] 28 U.S.C. § 2254(d).
[59] ECF No. 6 at 6.

alleges that trial IAC because the 911 phone call that was played for the jury was not transcribed.[60] The state district court denied these claims:

> Defendant alleges that trial counsel was ineffective for not requesting the 911 call be officially transcribed into evidence and did not ask for a certified transcript to be produced. This Court finds this claim meritless because the jury heard the 911 call played to them and it was admitted into evidence for the jury to review. Moreover, there are rough draft transcripts of the proceedings. Thus, this Court finds Defendant cannot show counsel was ineffective or that he was prejudiced.[61]

Again, to the extent that Banark presented these claims on appeal of his state postconviction petition to the Nevada Court of Appeals, the court summarily denied it.[62]

Banark has not identified how counsel was ineffective here. His counsel objected at trial to the introduction of the 911 recording,[63] but the state district court admitted it into evidence. And as for the trial transcripts, counsel did make a request. Counsel asked for: "All transcripts, including word index, of the jury trial held on January 13, 2014 and January 14, 2014, jury selection, opening statements, testimony, matters heard outside the presence of the jury, arguments and rulings by the Court, settling of instructions, closing arguments, [and] verdict."[64] The transcripts were filed into the record on June 18, 2014.[65] Banark has not demonstrated that counsel's decision to request rough draft transcripts instead of certified transcripts was not the result of reasonable professional judgment.[66] Respondents are correct that Banark does not point

---

[60] *Id.*
[61] Exh. 126 at 8–9.
[62] *See* Exhs. 146, 151.
[63] Exh. 80 at 150.
[64] Exh. 98.
[65] *See* Exh. 80 at 1; Exh. 81 at 1.
[66] *Strickland*, 466 U.S. at 690.

12

to any alleged errors or omissions in the rough draft trial transcripts. Banark has not demonstrated that he was in any way prejudiced by counsel requesting rough draft transcripts rather than certified transcripts of the trial. Accordingly, Banark failed to show that trial counsel was ineffective.[67]

In sum, Banark has not demonstrated that the Nevada Court of Appeals' decisions on grounds 2(10) and 2(11) were contrary to or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.[68] So grounds 2(10) and 2(11) are denied.

**E.     Medical records [ground 2(17)]**

Finally, in ground 2(17), Banark claims that his trial counsel was ineffective for failing to timely obtain his medical records.[69] Defense counsel sought to introduce medical records that showed that Banark had cataract surgery years after the incident in question.[70] Counsel argued that the records were relevant to Banark's ability to complete the field sobriety tests. Counsel had sought the records earlier, but only actually received them during the trial. The State objected. The court did not allow the medical records into evidence because the motion to admit the records was untimely and the earliest records were from 2012 and thus not relevant to the 2010 incident.

Denying this claim, the state district court found:

> Defendant alleges that trial counsel did not submit a motion to admit medical records, did not obtain all medical records from social services, hospitals, and the social security administration, and did not receive his medical information before trial, and it

---

[67] *Id.*

[68] 28 U.S.C. § 2254(d).

[69] ECF No. 34 at 6.

[70] Exh. 80 at 9–11.

13

instead arrived during trial resulting in the records not being admitted into evidence. This Court finds, Defendant cannot demonstrate that trial counsel's performance fell below an objective standard of reasonableness. Trial counsel attempted to obtain the records earlier but was unable to. Immediately after trial counsel obtained the records, he moved for their admission the next day. Moreover, trial counsel made a strategic decision to only admit certain medical documents because they were repetitive. This, this Court finds trial counsel is not ineffective.

Additionally, this Court cannot demonstrate prejudice because the Nevada Supreme Court has already found that the medical records showing that Defendant had cataracts two years after he was arrested for DUI was irrelevant. Additionally, the [Nevada] Supreme Court found that even if it was relevant, any marginal relevance would have been substantially outweighed by the risk of confusing the jury, given the absence of evidence of Banark's vision at the time of the DUI and evidence showing a link between cataracts and performance on field sobriety tests. Thus, this Court finds Defendant cannot establish prejudice under *Strickland* because the medical records would not have been admissible.[71]

To the extent that Banark presented this claim on appeal of his state postconviction petition to the Nevada Court of Appeals, the court summarily denied it.[72]

Banark presents nothing here to show that he suffered prejudice; counsel did try to introduce the medical records, but those records shed no light on Banark's eyesight at the time of the DUI. Banark thus has not demonstrated that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*.[73] Ground 2(17) also is denied.

---

[71] Exh. 126 at 7.
[72] *See* Exhs. 146, 151.
[73] 28 U.S.C. § 2254(d).

14

### Certificate of Appealability

Because the court has denied all grounds on which Banark petitions for federal habeas relief, this is a final order adverse to the petitioner. Rule 11 of the Rules Governing Section 2254 Cases thus requires this court to determine whether a certificate of appealability (COA) should issue. To obtain a certificate of appealability, a petitioner must make "a substantial showing of a denial of a constitutional right"[74] by showing that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."[75] To meet this threshold inquiry, the petitioner must demonstrate that the issues are debatable among jurists of reason, a court could resolve the issues differently, or that the questions are adequate to deserve encouragement to proceed.[76] For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim for the denial of a constitutional right and (2) whether the court's procedural ruling was correct.[77] Based on this record and the nature of my merits disposition, I find that petitioner cannot satisfy these standards, and I decline to issue a certificate of appealability.

### Conclusion

IT IS THEREFORE ORDERED that the second-amended petition **[ECF No. 34] is DENIED**.

IT IS FURTHER ORDERED that **a certificate of appealability is DENIED.**

IT IS FURTHER ORDERED that the Clerk of Court is directed to **ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.**

---

[74] 28 USC § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

[75] *Slack*, 529 U.S. at 484.

[76] *Id.*

[77] *Id.*

And because the petition is denied and this case is now closed, IT IS FURTHER ORDERED that petitioner's motion for temporary injunction **[ECF No. 94] is DENIED**.[78]

Dated: August 27, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[78] The first thing that a movant must establish to obtain injunctive relief is the likelihood of success on the merits of a claim. Because I find that all of Banark's claims lack merit, injunctive relief is not available to him for any purpose in this case.